UNITED STATES, Appellee,

v.

Leroy McCASKEY, Sergeant, U.S.
Marine Corps, Appellant.

No. 62,923.

NMCM 87–3673.

U.S. Court of Military Appeals.

June 14, 1990.

For Appellant: *Captain Dwight H. Sullivan,* USMCR (argued).

For Appellee: *Lieutenant J. Richard Chema,* JAGC, USN (argued); *Commander Thomas W. Osborne,* JAGC, USN (on brief); *Lieutenant Charles A. Polen,* JAGC, USNR and *Lieutenant John J. Mulrooney, II,* JAGC, USN.

*Opinion of the Court*

EVERETT, Chief Judge:

A special court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of three specifications alleging indecent acts with the same female under the age of 16 years, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. Upon these findings, the members sentenced appellant to a bad-conduct discharge, confinement for 4 months, forfeiture of $200.00 pay per month for 4 months, and reduction to the lowest enlisted grade. The convening authority approved these results, and the Court of Military Review affirmed in an unpublished opinion.

The issues now before this Court (29 MJ 438) concern Mil.R.Evid. 801(d)(1)(B),[1] which instructs that

[a] "statement is not hearsay if ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive ..."

Appellant asks this Court to consider whether, to be admissible under this rule, a prior consistent statement of the declarant must have been made *before* the alleged

1. Manual for Courts–Martial, United States,  1984.

recent fabrication or the time when the alleged improper influence or motive arose.

We hold that, generally, it does.[2] *See also* Mil.R.Evid. 401 (defining "relevant evidence"), 402 (only relevant evidence admissible), and 403 (excluding relevant evidence because of prejudice, confusion, or waste of time).

# I

Although the facts are unique to this case, the scenario in which this issue arises regrettably is not uncommon: A child (in this case, a 13–year–old girl) complains of indecent acts upon her by the named accused; the child makes one or more pretrial statements to friends, parents, investigators, or social workers regarding the acts. The child testifies at trial and is impeached by defense counsel on one or more possible grounds—such as, her trial testimony differs in some material respect from her pretrial statement; her trial testimony is the product of improper suggestion put in her mind by those with whom she has discussed the incident; or her trial testimony is motivated by some improper incentive such as punishing the accused for something entirely unrelated to the criminal charge. Then trial counsel seeks to introduce one or more of the child's pretrial statements that are consistent with her trial testimony in order to rehabilitate the credibility of the trial testimony.

As the scenario continues, the defense almost invariably objects to this use of a prior statement. The objection might be based on any of several grounds: Mere cross-examination, no matter how vigorous, cannot alone constitute, in the words of the rule, "an express or implied charge against

the declarant of recent fabrication or improper influence or motive," *see United States v. Meyers*, 18 MJ 347, 350 (CMA 1984) (it can); or the impeaching evidence or cross-examination did not actually constitute a charge of falsity (it did), or the prior statement of the declarant is not actually consistent with the trial testimony (it was), *see United States v. Jones*, 26 MJ 197, 199–200 (CMA 1988).

Another possible basis for such objection—and the one in focus in this case—is that the declarant made the prior consistent statement *after* the declarant already had fabricated the declarant's version of events or *after* the improper influence or motive had arisen. This ground for objection silently assumes the predicate, namely: As a matter of law, the timing of the prior consistent statement vis-a-vis the fabrication or improper influence or motive affects the statement's admissibility.

The viability of this predicate was raised in *Meyers*. The majority of this Court did not decide the issue, however, because it concluded that the prior consistent statement there had been made before the alleged fabrication or improper motive materialized.[3] In my dissenting opinion,[4] though, I disagreed on this timing; and so I necessarily proceeded to address the question which, as a Court, we decide today.[5]

# II

Under the predecessor of Mil.R.Evid. 801(d)(1)(B), the answer was clear: "[A]ccording to the language of paragraph 153a [of the Manual for Courts–Martial, United States, 1969 (Revised edition)] and the examples it provided, a prior consistent

2. Counsel have offered no instances to us in which a prior consistent statement that was made *after* the point of alleged fabrication or improper influence would be probative within the framework of our analysis of Mil.R.Evid. 801(d)(1)(B). However, acknowledging the possibility that such an instance might present itself, we decline to state our holding in absolute terms, and, instead, leave the door open to such a remote possibility.

3. A similar situation existed in *United States v. Hurst*, 29 MJ 477, 483 (CMA 1990).

4. *United States v. Meyers*, 18 MJ 347, 352 (CMA 1984) (Everett, CJ, dissenting).

5. The defense theory in this trial was that the declarant had falsified her story from the very beginning due to improper motives. In this context, any pretrial statement of the declarant would postdate the time when the improper motive arose, so the issue is ripe for resolution.

statement would be admissible only if it preceded the existence of the influence, motive, or bias that is claimed to have impaired the witness' credibility, in support of which the prior statement was offered." *United States v. Sandoval*, 18 MJ 55, 66 (CMA 1984). This paragraph perpetuated what had been the consistent rule in the military justice system at least as early as the 1921 Manual for Courts–Martial;[6] and it was parallel, as well, with what had been the more recent common-law rule.[7]

However, the drafters of the new rule—which actually was taken verbatim from Fed.R.Evid. 801(d)(1)(B)—implicitly acknowledged in their analysis that this clarity was a thing of the past. They observed that, "[o]n its face, the Rule does not require that the consistent statement offered have been made prior to the time the improper influence or motive arose or prior to the alleged recent fabrication." After citing two Federal court of appeals cases in which the courts, nonetheless, did "read such a requirement into the rule," *see United States v. Quinto*, 582 F.2d 224 (2d Cir.1978); *United States v. Scholle*, 553 F.2d 1109 (8th Cir.1977), the drafters offered this retort: "The propriety of this limitation is clearly open to question. *See generally United States v. Rubin*, 609 F.2d 51 (2d Cir.1979)." Manual for Courts–Martial, United States, 1984, at A22–47 (Change 2).

The difference of views among the Federal courts of appeals that is reflected in this analysis has continued. Some have imposed a requirement that the prior statement precede the time of the alleged fabrication or improper influence or motive, while others have declined to impose any such requirement of automatic exclusion. *See United States v. Hurst*, 29 MJ 477, 483 (CMA 1990), and cases cited therein.

There has been disagreement within the Courts of Military Review, as well. For instance, the Navy–Marine Corps Court of Military Review, in *United States v. Cottriel*, 21 MJ 535 (1985), found "no requirement in Mil.R.Evid. 801(d)(1) that the prior consistent statement precede the occurrence of the tainting influence." *Contra United States v. Waldrup*, 30 MJ 44 (NMCMR 1990)(prior consistent statement must precede the motive to falsify, citing *Jones* but not *Cottriel*). On the other hand, in *United States v. Nelson*, 21 MJ 711, 713 (1985),[8] the Air Force Court of Military Review, after noting agreement with the dissenting opinion in *Meyers* "that the key to these difficult cases is relevance," reasoned: "It is logically impossible to rebut allegations of undue influence by introducing a statement produced while the speaker is still living under the influence of the person whose influence the rebuttal seeks to disprove."

Even our own opinions have wavered somewhat in their implications on this issue. *Compare United States v. Sandoval, supra* at 63 (observing in dicta, as to the facial language of Mil.R.Evid. 801(d)(1), that it "does not require that the statement precede the occurrence of the influence"), *with United States v. Jones*, 26 MJ at 200 [broadly noting, "Under the Federal Rules of Evidence and state evidence codes based thereon (as are the Military Rules of Evidence), the proponent of the witness impeached thereby may then rehabilitate the witness by introducing a prior consistent statement given before the event which is alleged to have resulted in the fabrication."].

Accordingly, our analysis in this unsettled area proceeds not from the weight of authority but from its roots and its logic.

### III

### A

"Hearsay" is an out-of-court statement made by a declarant that is "offered in

---

6. *See* para. 153*a*, Manual for Courts–Martial, United States, 1951; para. 139*a*, Manual for Courts–Martial, U.S. Army, 1949; para. 124*a*, Manual for Courts–Martial, U.S. Army, 1928; and para. 258*a*, Manual for Courts–Martial, 1921.

7. *See* discussion of common law, *infra*.

8. *Aff'd on other grounds*, 25 MJ 110 (CMA 1987), *cert. denied*, 484 U.S. 1061, 108 S.Ct. 1016, 98 L.Ed.2d 982 (1988).

evidence to prove the truth of the matter asserted" in that statement. Mil.R.Evid. 801(c). Unless such a statement meets at least one of the specific and time-tested exceptions, *see* Mil.R.Evid. 803(1)–(23) and 804(b)(1)–(4); *see also* Mil.R.Evid. 803(24) and 804(b)(5), the general rule is that hearsay is inadmissible. Mil.R. Evid. 802.

That was not always the case. At common law, hearsay was fully admissible until the mid–18th century. Graham, *Prior Consistent Statements: Rule 801(d)(1)(B) of the Federal Rules of Evidence, Critique and Proposal,* 30 Hastings L.J. 575, 577 (1979). When hearsay became inadmissible generally, prior consistent statements still could be offered—even during direct examination—to corroborate a witness' in-court testimony. *Id.* From the early 1800s, though, such statements could be used "only to rebut impeaching evidence directed at the credibility of the witness." *Id.* at 578.

This pattern of steady constriction of permissible use of prior consistent statements at common law continued until it reached the point where use of prior consistent statements to rebut such impeaching evidence was limited to those statements that had been made "at a time prior to the existence of a fact said to indicate bias, interest, or corruption." 4 Wigmore, *Evidence* § 1128 at 268 (Chadbourn rev. 1972). Under other circumstances, such statements were not admissible, "reflect[ing] the common law view that someone who repeats the same story over and over is not necessarily likely to be more truthful than someone who says the same thing just once. A lie often repeated does not become the truth." S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* 614 (2d ed.1986). In other words, the *mere* fact that a witness has told the same version on prior occasions is not *itself* probative of whether the witness is telling the truth at trial. *See* 3 J. Weinstein and M. Berger, *Weinstein's Evidence* § 607[08] at 607–115 (1988).

■ In at least one way, Fed.R.Evid. 801(d)(1)(B)—and its mirror image of the

same number in the Military Rules of Evidence—altered this restrictive trend: This rule declared that a prior consistent statement, made by a declarant who testifies at trial and is subject to cross-examination, was "not hearsay" when "offered to rebut an express or implied charge against ... [the declarant] of recent fabrication or improper influence or motive." Defined as nonhearsay, such a statement is admissible substantively on the merits of the case, not just for rehabilitation purposes. S. Saltzburg and K. Redden, *Federal Rules of Evidence Manual* 810 (4th ed. 1986), Advisory Committee's Note, Fed.R.Evid. 801(d)(1)(B).

According to 4 *Weinstein's Evidence, supra,* § 801(d)(1)(B)[01] at 801–150:

Two reasons have been advanced for departing from the orthodox rule limiting the statements solely to rehabilitative purposes:

[First, i]t could be argued that a party should not be able to cumulate evidence in this way. However, since the opponent has opened the door by attacking his credibility there is no harm. [Second, s]ince the jury, in all probability, would not understand, or would ignore, a limiting instruction anyway there is no good reason for giving one.

(Footnote omitted.)

While the new rule did expand use of prior consistent statements as indicated, it is important to note, for purposes of our subsequent discussion, that the drafters of the Federal Rule consciously limited the type of prior statements that would be substantively admissible under Fed.R.Evid. 801(d)(1):

The position taken by the Advisory Committee in formulating this part of the rule is founded upon an *unwillingness to countenance the general use of prior prepared statements as substantive evidence,* but with a recognition that particular circumstances call for a contrary result.... The rule requires in each instance, as a general safeguard, that the declarant actually testify as a witness, and it then enumerates three

situations in which the statement is excepted from the category of hearsay. *Compare* Uniform Rule 63(1) which allows any out-of-court statement of a declarant who is present at the trial and available for cross-examination.

S. Saltzburg and K. Redden, *supra* at 809, Advisory Committee's Note, Fed.R.Evid. 801(d)(1)(emphasis added).

Weinstein in his treatise commented upon the drafters' unwillingness to "go as far as the 1953 Uniform Rule" 63(1) would have gone—that is, to "exempt[ ] all prior statements of a witness—and, therefore, all prior consistent statements—from the definition of hearsay." Admission of all prior statements under the Uniform Rule would depend entirely on relevance, with discretion in the judge not to admit such evidence if it "would be merely cumulative." Weinstein contrasts such a broad, all-inclusive rule, with what the drafters of the Federal Rule chose, instead [Weinstein, *supra* at 801–150 to 801–151 (footnotes omitted) ]:

> Substantive use under Rule 801(d)(1)(B) is limited to situations where high probative value is most likely. Evidence which counteracts a suggestion that the witness changed his story in response to some threat or scheme or bribe by showing that his story was the same prior to the external pressure is highly relevant in shedding light on the witness' credibility. Evidence which merely shows that the witness said the same thing on other occasions when his motive was the same does not have much probative force "for the simple reason that mere repetition does not imply veracity."

### B

This evolutionary background of Fed.R. Evid. 801(d)(1)(B)—from the early common-law treatment of hearsay up to the Advisory Committee's Notes on the Rule—convinces us that its counterpart, Mil.R.Evid. 801(d)(1)(B), generally [9] was intended to be limited to prior consistent statements made before the alleged recent fabrication or improper influence or motive occurred.

When the Advisory Committee drafted Fed.R.Evid. 801(d)(1)(B), it carefully crafted a rule that would make certain very specific prior statements admissible in evidence, not just for rehabilitative purposes, but for general substantive use. Except for being defined in this rule as "not hearsay," such statements undoubtedly would be classic hearsay: out-of-court statements by a declarant "offered ... to prove the truth of the matter asserted." Fed.R.Evid. 801(c). As indicated earlier, the Advisory Committee's Notes clearly indicate that this new, unlimited use of prior statements was consciously restricted to the circumstances set out in the rule; and so—given the risks attending hearsay-type evidence generally—a rule that defines what otherwise would be hearsay as "not hearsay" should be narrowly read and strictly applied. *See United States v. Meyers*, 18 MJ at 353 (Everett, CJ, dissenting).

In the usual case where a prior consistent statement is offered—one in which the witness has been charged by the adversary with having recently fabricated the trial testimony or with testifying while under an improper influence or motive—the prior statement is offered to show that the same story as that given during trial testimony was given earlier by the declarant. However, to be logically relevant to rebut such a charge, the prior statement typically must have been made *before* the point at which the story was fabricated or the improper influence or motive arose. Otherwise, the prior statement normally is mere repetition which, if made while still under the improper influence or after the urge to lie has reared its ugly head, does nothing to "rebut" the charge. Mere repeated telling of the same story is not relevant to whether that story, when told at trial, is true.

Two other general situations come to mind in which such statements might be offered as evidence. The first is illustrated

---

**9.** *See* n. 2, *supra.*

by a case in which the witness has been impeached by a prior inconsistent statement, and a prior consistent statement—made *after* the inconsistent statement was made—is offered somehow to explain the alleged inconsistency or to show that it was not really inconsistent at all. *See, e.g., Hangar v. United States,* 398 F.2d 91 (8th Cir.1968), *cert. denied,* 393 U.S. 1119, 89 S.Ct. 995, 22 L.E.2d 124 (1969). In such a case, if the prior consistent statement is being offered to prove the truth of the matter asserted, then it must fit the narrow confines of Mil.R.Evid. 801(d)(1), or it is inadmissible hearsay.[10]

While some argument might be made that such a prior consistent statement might be relevant, *see id.,* it also quite clearly, in our view, suffers from the same risks of unreliability as does all hearsay. Additionally, considering that the declarant will testify at trial and, therefore, will have the opportunity to offer live testimony to explain away the alleged inconsistent statement in any way the declarant wishes, whatever probative value the substance of the intervening consistent statement has is rather minimal compared to the danger of unfair prejudice. *See* Mil.R.Evid. 403.

The second situation in which such a statement might be offered is as evidence of the fact of the statement rather than as evidence of its content. In such a case, a hearsay objection would not lie in any event; and so it is unnecessary for the proponent to wedge it into Mil.R.Evid. 801(d). Counsel and military judges, however, should be vigilant to ensure both that the fact of the statement is relevant for some purpose (*i.e.,* credibility of the witness, *see* Mil.R.Evid. 607) and that the probative value is not "substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the members." Mil.R.Evid. 403.

## IV

In light of the foregoing, the military judge erred when he admitted the proffered prior consistent statement against appellant. The defense theory was that the witness had lied from the very beginning, and the complained-of statements postdated the point at which the fabrication occurred.

Moreover, it cannot be successfully argued that the statements were admitted for some purpose other than under Mil.R.Evid. 801(d)(1)(B): The military judge expressly admitted this evidence for that purpose and instructed the members that they could consider it substantively.

■ Our examination of the record, however, convinces us that the error in this case presented no fair risk of prejudice. *See* Art. 59(a), UCMJ, 10 USC § 859(a). The prosecution evidence—extending to appellant's own confession (even though disavowed by appellant at trial), the victim's detailed live testimony, and testimony of a social worker who was qualified as an expert witness in child sexual abuse—was simply overwhelming.[11]

## V

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Judge SULLIVAN concurs.

COX, Judge (concurring):

I agree with the majority opinion that, under the facts of this case, the exhibits in question did not qualify as prior consistent

---

10. *Cf. United States v. Pierre,* 781 F.2d 329 (2d Cir.1986) (sometimes cited as an example of an appropriate instance for admission of a prior consistent statement that was made after a prior inconsistent statement was made, for the purpose of rebutting inferences arising from an omission in the prior inconsistent statement; carefully read, though, it is equally explainable as a case admitting a prior consistent statement to rebut a charge of recent fabrication of trial

testimony—where the only role of the prior inconsistent statement was to support that charge).

11. For the same reason, we conclude that, if error occurred in the review of the staff judge advocate in its treatment of this error, it, too, was harmless.

statements. Mil.R.Evid. 801(d)(1)(B). This does not, however, mean that the statements were not admissible. The defense swung the door wide open as to these documents and made their content relevant. Mil.R.Evid. 401 and 402. The child-victim had testified about appellant's alleged criminal conduct. Defense counsel then sought to impeach her with a series of inconsistent and allegedly inconsistent statements. Counsel made much of the fact that the victim changed her story on several occasions. The victim was of course permitted to explain why she changed her story; but when the prosecution sought to introduce the prior statements to which defense counsel alluded, the defense objected to their admission.

In my view, this is not a hearsay issue at all. The proper basis for admission of the statements is that they were relevant evidence—made so by the defense—and it was necessary and proper for the factfinder to know their content in order to understand the witness' explanation of the changes. The defense cannot be heard to complain that it has a right to present an abbreviated or distorted picture of the facts to the court. That is what redirect examination is designed to prevent.

Admittedly, admission for such a limited purpose requires a careful explanation when the factfinder is a court-martial comprised of members; and the military judge did not give the right instruction in this case. Like the majority, however, I detect no prejudice to appellant under the circumstances.

As for Mil.R.Evid. 801(d)(1)(B), I am quite comfortable with the test being that the evidence must "*rebut* an express or implied charge against the declarant of recent fabrication or improper influence or motive" (emphasis added). I certainly agree that anytime it can be shown that a proffered statement *preceded* some alleged recent fabrication, or improper influence, or motive then rebuttal is assured. I am simply unwilling to rewrite the rule so as to make it somebody's burden (other than the accused's) to prove in every case the exact point that this alleged falsification, influence, or motive occurred and then to prove that the proffered statement occurred before that point. I am confident that military judges will know when something has been rebutted and when it has not.